**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

Arvig Enterprises, Inc., Arvig Enterprises,
Inc. Employee Stock Ownership Trust,
Arvig ESOP Trustee Committee, Allen
Arvig, Dennis Arvig, Bruce Ward, and           Civ. No. 12-2510 (RHK/LIB)
Marvin S. Ward, Special Administrator of       **MEMORANDUM OPINION**
the Estate of Donna M. Ward                    **AND ORDER**

                          Plaintiffs,

v.

Sansome Street Appraisers, Inc., Weinress &
Associates, Inc., and M.O. "Tony" Weinress,

                          Defendants.

---

Paul B. Hunt, Svingen, Karkela, Cline, Haugrud, Hunt, Larson & Jensen, Perham, Minnesota, for Plaintiffs.

Daniel E. Wille, Jacqueline E. Kalk, John H. Lassetter, Littler Mendelson PC, Minneapolis, Minnesota, for Defendant Sansome Street Appraisers, Inc.

J. Morrow Otis, San-Chuen Lau, Steven L. Iriki, Moscone Emblidge Sater & Otis LLP, San Francisco, California, Shannon M. McDonough, Alyson M. Palmer, Fafinski Mark & Johnson, PA, Eden Prairie, Minnesota, for Defendants Weinress & Associates, Inc. and M.O. "Tony" Weinress.

---

**INTRODUCTION**

This case arises from an allegedly faulty appraisal of a company's stock. Plaintiffs, including Arvig Enterprises, Inc. ("Arvig") and several of its employees, allege that Defendants Sansome Street Appraisers, Inc. ("Sansome") and Weinress & Associates, Inc. and M.O. "Tony" Weinress (collectively referred to in the singular as "Weinress"), incorrectly and insufficiently valued Arvig stock, leading Plaintiffs to buy

and sell the stock at prices, and in quantities, that they would not have otherwise. Defendants now move to dismiss Plaintiffs' claims, and for the reasons set forth below, their Motions will each be granted in part and denied in part.

**BACKGROUND**

The Plaintiffs in this action are Arvig, its Employee Stock Ownership Trust[1] ("the ESOP"); the Arvig ESOP Trustee Committee ("the Committee") that governs the ESOP; and several past or current Arvig employees who sold stock to the ESOP during the relevant time period: Allen Arvig, Dennis Arvig, Bruce Ward, and Marvin Ward, the Special Administrator of the Estate of Donna Ward (collectively "the Shareholder Employees").

In 2002, Arvig set up its ESOP to "enable participating employees to share in the growth and success of Arvig, and to provide employees with an opportunity to accumulate capital for their retirement." (2d Am. Compl. ¶ 13.) One of the ESOP's functions is to buy stock from exiting employees to allow them to "cash out." As a plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), the ESOP is subject to various regulatory requirements, one of which is the annual valuation of Arvig stock. According to the Second Amended Complaint, the Committee and ESOP

---

[1] An employee stock ownership trust is a "qualified, defined contribution, employee benefit (ERISA) plan designed to invest primarily in the stock of the sponsoring employer." *Employee Stock Ownership Plan-ESOP*, INVESTOPEDIA, http://www.investopedia.com/terms/e/esop.asp (last visited October 21, 2013). The ESOP's sponsoring company and participating employees receive various tax benefits on their contributions and withdrawals, respectively. See id.

hired Sansome, an independent appraisal firm, to provide it with annual valuations. Sansome, in turn, hired Weinress to conduct the appraisal. (Id. ¶ 15 & Ex. A.)

From 2002 through 2009, Defendants provided the ESOP with valuations of Arvig stock. The Committee relied on these valuations in determining the value of Arvig stock, as it is required to do under ERISA. (Id. ¶ 13.) Additionally, Arvig, the ESOP, and the Committee relied upon the valuations "to conduct regular business, conduct stock purchase transactions, fund the Arvig ESOP, provide employee benefits and conduct all other usual and ordinary business that regularly relies on independent valuations/appraisals." (Id. ¶ 18.)

Defendants also, upon request, provided the ESOP with "fairness opinion letters." In these letters, Weinress opined on proposed stock purchases by the ESOP, addressing whether it would be paying in excess of fair market value for a given number of shares at a specified price per share. (Id. Ex. B.) Plaintiffs other than the ESOP used Defendants' valuations and fairness opinion letters too. The ESOP provided them to Shareholder Employees to use during negotiations regarding the sale of their stock. (Id. ¶ 20.) Between 2002 and 2009, the Shareholder Employees sold stock to the ESOP on fifteen different occasions, each time relying on Defendants' valuations and fairness opinion letters. (Id. ¶ 35.) Plaintiffs allege that Defendants knew these materials would be disclosed to Shareholder Plaintiffs during stock-purchase negotiations and that they were third-party beneficiaries of the valuation contract with Sansome. (Id. ¶¶ 19–20.)

In 2009, the ESOP underwent an ERISA-compliance review by the Department of Labor ("DOL"). (Id. ¶ 21.) During this investigation, Plaintiffs claim "the DOL found

egregious errors with Defendants' valuations." (Pls.' Mem. at 31.) Additionally, Plaintiffs contend that Defendants breached their duty to "diligently and completely comply" with the DOL investigation, and failed to competently support their valuations of Arvig stock. (2d Am. Compl. ¶ 23.) As a result of Defendants' actions, Plaintiffs assert the DOL was "forced" to issue a subpoena for Weinress's records. (Id. ¶¶ 23–24.) Moreover, Arvig allegedly incurred excess expenses in the amount of $719,391.64 during the investigation to rectify Defendants' valuations. (Id. ¶ 29.)

As a result of the investigation, Arvig entered into a voluntary compliance agreement with the DOL, which required all of Defendants' past valuations to be recalculated. (Id. ¶ 31.) Arvig hired Horizon Trust & Investment Management ("Horizon") to serve as an "independent discretionary Trustee" to the ESOP. (Id. ¶ 27.) Horizon, in turn, engaged Chartwell Capital Solutions ("Chartwell") to serve as successor independent financial advisor. (Id. ¶¶ 27–28, 31.)

The new valuations from Chartwell for years ended 2003 through 2005 did not diverge dramatically from Defendants'. (Id. ¶ 33.) However, for year ended 2006, Horizon determined that Defendants failed to account for an $18,800,000 investment Arvig made in Hector Communications. (Id.) Consequently, Horizon concluded that Weinress substantially undervalued Arvig stock for years ended 2006–2008. (Id.)

The following table compares Defendants' valuations of Arvig stock to Horizon's valuations of Arvig stock for years ended 2003–2008:

| Year Ending December 31, | Defendants' Valuation | Horizon's Valuation |
|---|---|---|
| 2003 | $48.24/share | $47.94/share |
| 2004 | $55.77/share | $56.86/share |
| 2005 | $57.20/share | $59.56/share |
| 2006 | $53.30/share | $85.60/share |
| 2007 | $92.47/share | $121.24/share |
| 2008 | $102.41/share | $134.00/share |

The DOL concluded that, due to Defendants' alleged undervaluation, the ESOP had underpaid exited plan participants and required Arvig, on behalf of the ESOP, to make restorative payments to these exited participants (Pls.' Mem. at 23–24), in the amount of $436,970.58 (2d Am. Compl. ¶ 30). The ESOP also contends it purchased and allocated to employees more shares of Arvig stock in reliance on Defendants' valuations than it would have had it known the stock's true value. (Id. ¶ 38.) Consequently, Plaintiffs claim Arvig, the ESOP, and the Committee will incur approximately $15,000,000.00 in damages as repurchase liability to exiting employees in the future. (Id. ¶ 39.)

The Shareholder Employees also claim they suffered damages due to Defendants' (allegedly) faulty valuations. They contend they undersold their Arvig stock to the ESOP by $4,994,643.60 collectively in reliance on the valuations. (Id. ¶ 35.) To the extent that Arvig, the ESOP, and the Committee may be liable to the Shareholder Employees for these damages instead of Defendants, they claim such damages as well. (Id. ¶ 34.)

Plaintiffs commenced the instant action in 2012, alleging that Sansome breached its contract with Plaintiffs (Count III), that Weinress was negligent (Count I) and engaged in professional malpractice (Count II) by incorrectly appraising the Arvig stock, and that Sansome is vicariously liable for Weinress's negligence and malpractice (Count IV). Sansome and Weinress both move to dismiss the claims against them. The Motions have been fully briefed and are ripe for disposition.

## STANDARD OF DECISION

The Supreme Court set forth the standard for evaluating a motion to dismiss in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 547. A "formulaic recitation of the elements of a cause of action" will not suffice. Id. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).

When reviewing a motion to dismiss, the Court "must accept [the] plaintiff's specific factual allegations as true but [need] not . . . accept a plaintiff's legal conclusions." Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010) (citing Twombly, 550 U.S. at 556). The complaint must be construed liberally, and any allegations or reasonable inferences arising therefrom must be interpreted in the light most favorable to the plaintiff. Twombly, 550 U.S. at 554–56. A complaint should not be dismissed simply because the Court is doubtful that the plaintiff will be able to prove

all of the necessary factual allegations. Id. at 556. Accordingly, a well-pleaded complaint will survive a motion to dismiss even if it appears that recovery is very remote and unlikely. Id. "Finally, the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).

## ANALYSIS

**I.     Arvig's and the Shareholder Employees' Breach-of-Contract Claim**

Defendants move to dismiss Arvig's and the Shareholder Employees' breach-of-contract claim for lack of standing, arguing none was a party to the contract with Sansome. As a general matter, a plaintiff must be party to a contract in order to assert rights under it. Caldas v. Affordable Granite & Stone, Inc., 820 N.W.2d 826, 832 (Minn. 2012).[2]

As to Arvig, Defendants' argument has no merit. Although Plaintiffs may have pleaded that the ESOP and Committee contracted with Sansome, it is plain from the contract itself (which is attached to the Second Amended Complaint) that *Arvig* contracted with Sansome. The contract is in the form of a letter-proposal from Sansome to David Arvig, Arvig's Chief Operating Officer. (2d Am. Compl. Ex. A.) The proposal refers to Arvig as "the Company" and promises "delivery of the complete valuation to the Company" in return for $10,000. (Id.) It concludes, "We hope the foregoing fully describes the valuation and the services and fee arrangements. Please indicate your

---

[2] The parties' contract does not include a choice-of-law clause and "neither party raises a conflict of law issue" in this diversity action, therefore the court will "simply appl[y] the law of the state in which it sits." BBSerCo, Inc. v. Metrix Co., 324 F.3d 955, 960 n.3 (8th Cir. 2003).

acceptance by acknowledging and returning a copy of this letter with the retainer and the required information." (Id.) At the bottom of the letter, there is an acknowledgment stating, "The foregoing proposal is hereby accepted on behalf of Arvig Enterprises, Inc." and signed by David Arvig. (Id.) Based on the contract's plain language, it would appear that Arvig *is* a party to it, and therefore has standing to assert a claim for its breach.

The Shareholder Employees, however, are undisputedly *not* parties to the contract. Plaintiffs allege, however, that they are third-party beneficiaries of it. Although one who is not a party to a contract generally has no rights under the contract, "a third party may enforce a promise made for his benefit even though he is a stranger both to the contract and the consideration." Caldas, 820 N.W.2d at 832. "[T]o determine whether a beneficiary of a promise is an *intended* beneficiary with legal rights under a contract or merely an *incidental* beneficiary with no legal rights," Minnesota has adopted section 302 of the Restatement (Second) of Contracts. Id. (emphases added). That section provides that a beneficiary is "intended" and therefore has standing if such standing "is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Restatement (Second) of Contracts § 302.

"To ascertain the parties' intent [with respect to beneficiaries], courts look to the surrounding circumstances at the time of contracting, and generally require the contract to express some objective manifestation of intent to benefit a third party." Nassar v.

Chamoun, No. A11-793, 2012 WL 426595, at *2 (Minn. Ct. App. Feb. 13, 2012) (citing Hickman v. Safeco Ins. Co. of Am., 695 N.W.2d 365, 370 n.7 (Minn. 2005)).  Defendants argue the contract does not express an intent to benefit the Shareholder Employees and Plaintiffs offer no argument to the contrary.  Plaintiffs do not make any allegation of intent in the Second Amended Complaint.  They allege the Shareholder Employees *were* third-party beneficiaries of the contract (2d Am. Compl. ¶ 19), but do not allege that Sansome and Arvig (or the ESOP) *intended* them to be, much less manifested that intent in writing.  Because the Shareholder Employees' allegations, if true, would establish only that they were incidental—but not intended—third-party beneficiaries, they have failed to state a claim for breach of contract.

**II.     The Shareholder Employee's Negligence and Malpractice Claims**

Weinress moves to dismiss the Shareholder Employees' claims of negligence and malpractice because, he argues, he did not owe them any duty of care.  In response, the Shareholder Employees rely on their allegations of third-party-beneficiary status to create a duty of care between Weinress and themselves.  However, this argument fails because Plaintiffs have not sufficiently pleaded they were intended third-party beneficiaries.  Plaintiffs have articulated no other reason Weinress would owe them a duty and the Court cannot discern any.  Indeed, to impose a duty of care toward the Shareholder Employees, when Weinress already owed a duty to the ESOP, to which they were selling their stock, would have put him in an "impossible situation" with conflicting duties—the ESOP would want the shares valued as low as possible and the Shareholder Employees would

want the shares valued as high as possible. (Weinress Mem. at 3.) Accordingly, the Shareholder Employees' claims against Weinress will be dismissed.

### III. Sansome's Liability for Weinress's Appraisals

Although Weinress conducted the (allegedly) faulty appraisals of Arvig stock, Plaintiffs seek to hold Sansome liable for them as well—both directly for its breach of contract and vicariously for Weinress's negligence and malpractice. Sansome moves to dismiss these claims, contending "Weinress, as an independent contract[or], assumed the obligation to perform and provide valuations" and that Sansome's only obligation was "to provide some billing functions," which it dutifully fulfilled. (Sansome Mem. at 22.) In essence, Sansome contends that it delegated the performance of the contract—save some billing functions—to Weinress and that it is not vicariously liable for any deficiency in Weinress's performance because Weinress was an independent contractor. Yet, Sansome cites no case law to support its contention. And while it is true that employers are not liable for an independent contractor's torts, e.g., Bagot v. Airport & Airline Taxi Cab Corp., No. C1-00-1291, 2001 WL 69489, at *1 (Minn. Ct. App. Jan. 30, 2001), that rule is inapplicable.

By contracting with the ESOP, Sansome promised to perform on the contract and thereby voluntarily assumed a duty—imposed by law—"'of acting with due care in [its] performance.'" Bagot, 2001 WL 69489, at *4 (quoting Pac. Fire Ins. Co. v. Kenny Boiler & Mfg. Co., 277 N.W. 226, 228 (Minn. 1937)). Plaintiffs correctly note that this duty is nondelegable. "That is, the performance of the contract may be delegated to another, but this delegation does not relieve the contractor of the duty to act, or of his duty to act with

due care.  Consequently [the contractor] is subject to liability for damage suffered by the contractee as a result of the negligence of the independent subcontractor."  Pac. Fire, 277 N.W. at 228.  Sansome cannot delegate the duties it owed to Plaintiffs—contractual or otherwise—to Weinress, nor can it pass off its potential liability for any damages caused by Weinress's negligence or malpractice.

## IV.   Plaintiffs' Damages

A large part of Defendants' Motions are aimed at disassembling and discrediting Plaintiffs' pleaded damages.  The thrust of their arguments is that Plaintiffs have either not suffered any damage as a result of the alleged undervaluation or their damages are speculative or were self-imposed.[3]  However, these arguments are without merit—at least at this stage—because Plaintiffs have alleged multiple specific and concrete injuries caused by Defendants.

The Shareholder Employees allege they were damaged by underselling their stock in reliance on Defendants' undervaluations.  And, to the extent the ESOP and not Defendants will be liable to the Shareholder Employees for those losses, the ESOP claims the same amount as damages.  This is not "double recovery" as Defendants allege, but rather permissible pleading in the alternative.

Arvig, the ESOP, and the Committee allege they have been damaged by the undervaluation because they encountered more than $700,000 of costs by undergoing a

---

[3] Defendants also make a rather confusing argument in which they assert the Committee, as a fiduciary of the ESOP under ERISA, should not be able to recover damages because the Defendants' (alleged) undervaluation did not result in any ERISA violations.  But this argument misses the mark completely because Plaintiffs do not allege ERISA violations.

- 11 -

DOL investigation and revaluation of Arvig stock and of the various stock purchases as a result of Defendants' errors. Arvig also alleges it was required to make restorative payments to exited employees as a result of the undervaluation. Finally, the ESOP and Committee further allege they will be damaged in the future because the ESOP purchased and distributed too many shares of Arvig stock in reliance on Defendants' undervaluation, and will be forced to repurchase more stock at higher prices from exiting employees than it otherwise would have.

These allegations of damages are more than sufficient to state a plausible entitlement to relief.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Sansome's Motion to Dismiss (Doc. No. 42) and Weinress's Motion to Dismiss (Doc. No. 45) are each **GRANTED** in part and **DENIED** in part. Sansome's Motion is **GRANTED** as to the Shareholder Employees'[4] claim for breach of contract (Count III of the Second Amended Complaint (Doc. No. 41)) and Weinress's Motion is **GRANTED** as to the Shareholder Employees' claims of negligence (Count I) and

---

[4] Plaintiffs Allen Arvig, Dennis Arvig, Marvin Ward, Special Administrator of the Estate of Donna Ward, and Bruce Ward.

malpractice (Count II) and those claims are **DISMISSED WITHOUT PREJUDICE** (as to those Plaintiffs only).  In all other respects, the Motions are **DENIED**.

Date:  October 22, 2013

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge
